# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-542 |
| JOHN KELVIN CONNER | : | |

## ORDER

AND NOW, this _____ day of _____, 2019, it is hereby ORDERED that, for the reasons set forth in the government's motion, the government's motion *in limine* to admit prior sworn testimony of an unavailable declarant is hereby GRANTED.

BY THE COURT:

_____
HONORABLE GERALD A. MCHUGH
*Judge, United States District Court*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-542 |
| JOHN KELVIN CONNER | : | |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT PRIOR**
**SWORN TESTIMONY OF UNAVAILABLE DECLARANT**

The United States of America, through its attorneys, William M. McSwain, United States Attorney, and Mark B. Dubnoff, Assistant United States Attorney, hereby moves *in limine* to admit the prior sworn testimony of an unavailable declarant.   As explained below, Sarah Fauntelroy is an 88-year-old woman who is unlikely to be able to testify at the trial because of a "physical or mental illness." Fed. R. Evid. 804(a)(4).   Ms. Fauntleroy, however, had testified on June 21, 2018 at a hearing before the Disciplinary Board of the Supreme Court of Pennsylvania on the precise matters at issue in this trial: namely, whether defendant John Kelvin Conner, an attorney, had made more than $95,000 in unauthorized withdrawals from Ms. Fauntleroy's bank account to fund his casino gambling.   Ms. Fauntleroy testified that she never gave Conner permission to use her money at casinos.   Conner represented himself at the hearing and personally cross-examined Ms. Fauntleroy at length.   Since Conner "had an opportunity and similar motive to develop [Ms. Fauntleroy's] testimony by direct, cross, or redirect examination," that testimony should be admitted, pursuant to Fed. R. Evid. 804(b)(1).

I.      **STATEMENT OF THE CASE**

On November 29, 2018, a federal grand jury in the Eastern District of Pennsylvania indicted Conner on 19 counts of wire fraud, in violation of 18 U.S.C. § 1343

(Counts 1 through 19), and one count of making a false statement to federal agents, in violation of 18 U.S.C. § 1001 (Count 20).

Counts 1 through 19 allege that Conner devised and participated in a scheme to defraud Ms. Fauntelroy out of more than $95,000 so that he could pay for his personal casino gambling.   On July 29, 2016, Ms. Fauntelroy, then 85, and Conner signed a power of attorney agreement (the "POA Agreement"), which granted Conner the authority to manage Ms. Fauntleroy's finances and pay her bills.   At the time, Ms. Fauntleroy lived at home but required the assistance of multiple caregivers, and her only source of income was a monthly pension. The POA Agreement obligated Conner to act "for the benefit" of Ms. Fauntleroy and to keep his assets separate from hers.   Conner, however, used the POA Agreement to liquidate a life annuity policy that Ms. Fauntleroy owned, deposit the proceeds into one of her bank accounts, and siphon nearly all of that money for his personal use at casinos.   The indictment alleges that from August 16, 2016 until April 22, 2017, Conner used an ATM card to make at least 176 withdrawals totaling at least $95,688 from Ms. Fauntleroy's bank account at Pennsylvania and New Jersey casinos, which he used for his personal gambling.   Conner never asked, let alone received, Ms. Fauntleroy's permission to use any of her money for his gambling.

The indictment further alleges that Conner neglected to pay Ms. Fauntleroy's bills, which led to Ms. Fauntleroy temporarily losing basic utilities like heat, hot water, electricity, and telephone services.   Additionally, many checks that Conner made payable to Ms. Fauntleroy's home caregivers were returned because of insufficient balances in her checking account.   Ms. Fauntleroy went to a lawyer in April 2017 and revoked the POA Agreement. Conner then allegedly tried to cover up his theft by sending Fauntleroy a check for approximately $67,708.15, which Conner claimed was the money he owed her.

In October 2017, Ms. Fauntleroy filed a complaint against Conner with the Office of Disciplinary Counsel ("ODC") for the Disciplinary Board of the Supreme Court of Pennsylvania.   On November 8, 2017, ODC sent a letter to Conner notifying him of the complaint.   On November 11, 2017, Conner mailed a response in which he admitted making all of the withdrawals from Ms. Fauntleroy's bank account at casinos but claimed, "I requested and received permission from Ms. Fauntelroy to use her checking account card from Wells Fargo Bank to withdraw money for my personal use while at the Parx Casino, The Borgata Casino, The Tropicana Casino and The Sugar House Casino between August 24, 201[6] and April 14, 2017."

On June 21, 2018, a three-member panel of the Disciplinary Board presided over a hearing on the ODC's complaint against Conner (the "ODC Hearing").   Three witnesses testified at the ODC Hearing, including Ms. Fauntleroy and Conner.[1]   Ms. Fauntleroy's direct testimony was brief and included the following exchange with ODC counsel:

> Q.     Ms. Fauntelroy, has Mr. Conner ever asked for your permission to use the money in your Wells Fargo account at a casino?
> A.     No.
> Q.     Had he done so, would you have given him such permission?
> A.     No.
> Q.     Did Mr. Conner ever tell you that he was going to be using the money in your Wells Fargo account at a casino?
> A.     No, he did not.
> Q.     Ms. Fauntelroy, have you ever told Mr. Conner that he could use the money in your Wells Fargo account at a casino?
> A.     No, I did not.
> Q.     Did Mr. Conner ever ask you to sign a document that authorized him to use the money in your Wells Fargo account at a casino?
> A.     No.
> Q.     Have you ever signed such a document?
> A.     No.
> Q.     Ms. Fauntelroy, are you aware of any document that authorized Mr. Conner to use the money in your Wells Fargo account at a casino?

---

[1] The third witness was Seth Maltzman, the attorney who had helped Ms. Fauntleroy revoke the POA Agreement. A copy of the entire transcript is being provided to the Court as Exhibit 1.

    A.    No, I did not.

…

    Q.    Ms. Fauntelroy, did you authorize Mr. Conner to pay himself a salary in the amount of $9,500 in exchange for legal services he provided to you?

    A.    No, I did not.

Tr. at 22:11-23:14.

Ms. Fauntleroy's direct testimony was so brief that it occupies less than three full pages of the hearing transcript.   Tr. at 21:20-24:14.   By contrast, Conner's cross-examination of Ms. Fauntleroy was lengthy enough to stretch over 51 pages of the hearing transcript. *Id.* at 24:18-75:24.[2]   Ms. Fauntleroy answered a few additional questions on redirect examination, *id.* at 78:19-79:15, and Conner chose not to conduct a re-cross examination.   *Id.* at 80:17-18.

Unfortunately, Ms. Fauntleroy's health appears to have deteriorated dramatically since she testified at the ODC hearing last June.   On January 9, 2019, the prosecution team met with Ms. Fauntleroy, her home health care aide, and two of her friends at Ms. Fauntleroy's home.   Ms. Fauntleroy looked physically weak, spent much of the time in bed, and had substantial difficulty communicating with other people during the visit.   According to Ms. Fauntleroy's home health care aide, Ms. Fauntleroy has lost substantial weight and communicative ability over the past two months.

The government informed defense counsel of these developments, and defense counsel does not dispute Ms. Fauntleroy's likely unavailability at trial.   Defense counsel, however, has indicated an intent to oppose the introduction of Ms. Fauntleroy's prior testimony, pursuant to Fed. R. Evid. 804(b)(1)   The government now brings this motion *in limine*.

---

[2] Portions of the transcript contain discussions among counsel and the three panelists about evidentiary issues, but Conner's examination of Fauntleroy occupies most of pages 24 through 75 of the transcript.

## II.     ARGUMENT

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him."   U.S. Const., amend. VI.   "But it has always been recognized that the right of confrontation is not absolute, even in instances where, as in some states, the constitutional provision is cast in terms of a right to meet the witness 'face to face.'"   *Government of Virgin Islands v. Aquino*, 378 F.2d 540, 547 (3d Cir. 1967). "The constitutional guarantee has been limited to the assurance of the right of cross-examination of the witness before his testimony may be used at a later trial."   *Id.* (citaitons omitted).

Similarly, Rule 804(a)(4) of the Federal Rules of Evidence provides that a "declarant is considered to be unavailable as a witness if the declarant … cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness." Fed. R. Evid. 804(b)(1) provides that an unavailable declarant's former testimony at "a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one" is "not excluded by the rule against hearsay" if it is "offered against a party who had … an opportunity and similar motive to develop it by direct, cross-, or redirect examination."   *Id.*   The Third Circuit has described the "former testimony exception" to the hearsay rule as being "firmly rooted in our jurisprudence." *United States v. Kelly*, 892 F.2d 255, 262 (3d Cir. 1989).

> The prior testimony exception was first recognized in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). Since *Mattox*, the Supreme Court has repeatedly stated that the admission of prior testimony does not violate the Confrontation Clause. *See e.g. Ohio v. Roberts*, 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8; *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972). *See also United States v. Salim*, 855 F.2d 944, 954-55 (2d

Cir.1988) (holding that former testimony exception of Rule 804(b)(1) was "firmly rooted in our jurisprudence").

*Id.* (footnote omitted).   *See also United States v. Paling*, 580 Fed. Appx. 144, 148 (3d Cir. 2014) (non-precedential) (describing Rule 804(b) as "more restrictive than the Confrontation Clause," meaning that if evidence is admissible under Rule 804(b), it necessarily satisfies the Sixth Amendment).

For Rule 804(b)(1) to apply in this case, the government must first establish that Ms. Fauntleroy is "unavailable" to testify at Conner's trial.   As a general matter, illness of an elderly witness can render that witness "unavailable" under Rule 804(a)(4).   *United States v. Mallory*, 902 F.3d 584 (6th Cir. 2018) (citations omitted).   The government would not have to "disprove the possibility of 'miraculous rejuvenation' in order to establish an elderly witness's unavailability on account of illness."   *Id.*   In this case, the defense has indicated that it will not object to the government's representation that Ms. Fauntleroy is an unavailable witness, but will nonetheless object to the admission of Ms. Fauntleroy's testimony at the June 21, 2018 ODC hearing.[3]

The key issue, therefore, is whether Conner "had an opportunity and similar motive to develop [Ms. Fauntleroy's] testimony by direct, cross, or redirect examination."   Clearly, Conner had an opportunity to develop Ms. Fauntleroy's prior testimony because he did develop that testimony by cross-examination.   Although Ms. Fauntleroy's direct examination was brief, Conner personally cross-examined Ms. Fauntleroy at length on topics that were both within and beyond the scope of her direct examination.   At the same time, Conner's motive at the ODC Hearing was identical to his motive at the upcoming trial: i.e., to cast doubt on Ms.

---

[3] Defense counsel made these representations to the government in an email on January 10, 2019.

Fauntleroy's testimony that she never authorized Conner to withdraw money from her bank account for his casino gambling.   Indeed, the government understands that Conner concedes that his motives are "similar" in the two proceedings.

The defense, however, has informed the government that it does not believe Conner had enough of an "opportunity" to cross-examine Ms. Fauntleroy at the ODC Hearing, in part because he lacked information he has subsequently learned during discovery.   Such an objection, however, is irrelevant to the Rule 804(b)(1) inquiry.   If a party in Conner's position could complain that his prior cross-examination of Ms. Fauntleroy could have been better, it would eviscerate the "former testimony exception" to the hearsay rule and the Confrontation Clause.   Under Conner's logic, in "virtually all subsequent proceedings, examiners will be able to suggest lines of questioning that were not pursued at a prior proceeding." *United States v. DiNapoli*, 8 F.3d 909, 914 (2d Cir.1993).   *See also United States v. Santos*, 481 F. App'x 574, 577–78 (11th Cir. 2012) (defendant had opportunity and similar motive to cross–examine witness during deposition, where defendant and his attorney were present at the deposition, questioned witness extensively about her memory loss and health problems, and defendant received a FBI report indicating witness was not able to identify any health care employees in one photographic lineup, even though defendant did not receive, prior to the deposition, another FBI report indicating that witness had not been able to identify defendant in a photographic lineup); *Thomas v. Cardwell*, 626 F.2d 1375, 1386 n. 34 (9th Cir. 1980) (rejecting argument by defendant at his second trial that purported discovery of new evidence established defendant's lack of opportunity to cross-examine a witness who had testified at the defendant's first trial), *cited in United States v. Koon*, 34 F.3d 1416, (9th Cir. 1980), *rev'd on other grounds*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("The failure of a defendant to discover potentially

useful evidence at the time of the former proceeding does not constitute a lack of opportunity to cross-examine."). The Court in *Thomas* explained:

> Often information will surface after a trial which, if known to a defense attorney, would have made the cross-examination of a witness more thorough or even more advantageous to the defendant. Nevertheless, that lack of information does not make the opportunity for cross-examination ineffective even though the cross-examination itself is less than optimal for the defendant. In such a situation, the defendant should move for a new trial under the theory of newly discovered evidence or, if the Government has hid the information from the defendant, under a *Brady* challenge.

*Id.*

In this case, the only relevant inquiry is whether Conner had a similar motive and opportunity to develop Ms. Fauntleroy's testimony at the ODC Hearing.   He had both.   Her testimony, therefore, is admissible under Rule 804(b)(1).

## III.    CONCLUSION

For all the foregoing reasons, the government respectfully submits that its motion *in limine* to admit the prior testimony of unavailable declarant Sarah Fauntelroy be granted.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


/s/ Mark B. Dubnoff
MARK B. DUBNOFF
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via

ECF's electronic filing system upon Arnold Joseph, Esq., counsel for the defendant.


/s/ Mark B. Dubnoff
MARK B. DUBNOFF
Assistant United States Attorney


Date: January 11, 2019