IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 2:18-cr-542 |
| | : | |
| vs. | : | |
| | : | |
| JOHN KELVIN CONNER | : | |

**O R D E R**

AND NOW, this _____ day of _____, 2019, upon consideration of the Government's Motion in Limine to admit prior sworn testimony of an unavailable declarant, it is hereby

ORDERED

that such motion is DENIED.

BY THE COURT:

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 2:18-cr-542** |
| | : | |
| vs. | : | |
| | : | |
| **JOHN KELVIN CONNER** | : | |

**<u>DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE THE PRIOR SWORN TESTIMONY OF AN UNAVAILABLE WITNESS</u>**

Defendant, John Kelvin Conner (hereinafter alternatively referred to as "Conner" and/or "Defendant"), by and through his counsel, Arnold C. Joseph, Esquire, hereby moves the Court for the entry of an Order precluding the Government from making any use of or referring to the prior sworn testimony of an unavailable witness, and states the following in support thereof:

**STATEMENT OF FACTS**

*The Government's Allegations*

Mr. Conner, a lawyer licensed by the Supreme Court of Pennsylvania, has been charged through a twenty-count indictment with wire fraud, in violation of 18 U.S.C. § 1343; and False statement, in violation of 18 U.S.C. § 1001. The charges all stem from the Government's allegations that Mr. Conner devised a scheme whereby he convinced the putative victim, Sarah Fauntleroy (identified as S.F. in the Indictment), who is an elderly woman, to execute a Power of Attorney so that he (Conner) could liquidate a life annuity policy that Ms. Fauntleroy owned; deposit the proceeds into one of her bank accounts and siphon nearly all of that money for his personal use at casinos, all without Ms. Fauntleroy's permission.

*Mr. Conner's defense to the Government's allegations*

Mr. Conner denies that he was involved in any such scheme. Instead he contends that the evidence at trial will demonstrate that he was asked by Ms. Fauntleroy's brother to assist Ms. Fauntleroy by paying her bills, the most important of which were for her caretakers who Ms. Fauntleroy needed in order to reside in her home. The evidence will further show that Mr. Conner, through the use of the POA, located and liquidated the above referenced annuity, so that there would be enough money to pay Ms. Fauntleroy's bills because without the money from the annuity she would be unable to sustain herself on her meager fixed income. Mr. Conner contends that from August 2016 through April 2017 he paid those bills for Ms. Fauntleroy which she asked him to pay. He agrees that he used Ms. Fauntleroy's ATM card at various casinos during that same period, however he did so with Ms. Fauntleroy's permission. Specifically, the evidence will show that he borrowed the funds, used in the casino from, Ms. Fauntleroy with her permission and that between August 2016 and April 2017 he repaid the entire loan. The only money that Mr. Conner withdrew, other than the money withdrawn at the casino, which was not for Ms. Fauntleroy's benefit was a sum of money that he withdrew for payment of his agreed upon fee for services rendered to Ms. Fauntleroy during the relevant period.

*Office of the Disciplinary Committee's allegations*

On November 8, 2017 Mr. Conner received a letter from the Office of Disciplinary Counsel which is a branch of the Disciplinary Board of the Supreme Court of Pennsylvania, which was entitled "Request for Statement of Respondent's Position". A copy of that letter is attached and marked as Exhibit A. That letter was Mr. Conner's first notice that Ms. Fauntleroy had accused him of any improprieties with respect to his representation. Through the letter Mr. Conner is advised that:

a. Ms. Fauntleroy filed a complaint against him with the Counsel;

b. based on the information received, as of that date, by the Counsel Mr. Conner's actions may have violated the Pennsylvania Rules of Professional Conduct; and

c. The specific actions referenced were Mr. Conner's use of Ms. Fauntleroy's ATM card in various casinos and Mr. Conner's alleged failures to carry out what the Counsel contended were his duties to pay various bills for Ms. Fauntleroy

The Counsel alleged that the above referenced conduct may have been in violation of Pennsylvania Rules of Professional Conduct 8.4 (b) and (c). As of that date and thereafter, those were the allegations that were leveled against Mr. Conner by the Disciplinary Counsel.

On June 21, 2018 a Disciplinary Hearing was held before the Disciplinary Board of the Supreme Court of Pennsylvania to address the allegations in Ms. Fauntleroy's complaint against Mr. Conner. As of the date of the hearing the Disciplinary Counsel did not give Mr. Conner any more information about the charges in Ms. Fauntleroy's complaint and indeed refused to produce witness statements or Ms. Fauntleroy's actual Complaint prior to the hearing. On the morning of the hearing the Disciplinary Counsel gave Mr. Connor copies of Ms. Fauntleroy's handwritten Complaint against him. Copies of that Complaint are attached and collectively marked Exhibit B.

During his opening statement, to the Disciplinary Board, the Disciplinary counsel made the following statement with regards to the allegations against Mr. Conner and the matters that were to be decided during the hearing:

> MR. WHITE: Did Sarah Fauntleroy authorize John Conner to spend tens of thousands of dollars of her funds at Parx Casino, the Borgata, the Tropicana and Sugarhouse casinos? That's the narrow factual issue that the Panel is here this morning to

determine.

> See Pg. 8 of the hearing notes of testimony were attached to the Government's motion in *limine*.

The Disciplinary Counsel further explained the charges as follows:

> You will hear Ms. Fauntleroy testify this morning that she never authorized Mr. Conner to use his funds at a casino. Mr. Conner never asked for her permission to use her funds at a casino and had he done so, she would not have granted him such permission.
>
> \*\*\*
>
> Now, the Petition for Discipline in this matter charged two violations of the rules of professional conduct, 8.4B and 8.4C. Rule 8.4B provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer on other respects. **The criminal act in this case is theft by failure to make required disposition of funds received.** I included the statutory language in the Petition for Discipline and I will include it again in my brief. I'd like to provide it to the Panel this morning as well. A person who obtains property upon agreement subject to a known legal obligation to make specified payments or other disposition whether from such property or its proceeds or from his own property to be reserved in an equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payments or disposition. By virtue of the Power of Attorney, Mr. Conner had access of the funds of Mr. Fauntleroy's Wells Fargo account. He intentionally dealt with these funds as his own and converted them for his own purposes at various casinos.
>
> \*\*\*

4

> Rule 8.4C provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. The theft of fiduciary funds epitomizes dishonesty, fraud and deceit.
> As I mentioned, the Petition for Discipline in the matter charged two violations of the Rule of Professional Conduct 8.4. And I believe Comment 4 to this rule is particularly applicable to this case. Lawyers holding public office assume legal responsibility going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers.
> The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.

See pages 10-13 Notes of testimony.

Ms. Fauntleroy provided testimony during the hearing. A very short direct examination in which she stated that Mr. Conner was not given permission to use her funds in a casino. She was never asked and it was never alleged that Mr. Conner created the POA, liquidated the insurance accounts; opened the bank accounts and obtained the ATM cards for the purpose of defrauding her.

***The Government's request to use Ms. Fauntleroy's testimony during the trial.***

The Government, through the instant motion has averred that Ms. Fauntleroy is not available to testify during the trial of this matter due to physical and/or mental impairments and that as a result thereof the court should allow the use of her sworn testimony from the disciplinary hearing to be read to the jury.

Mr. Connor objects to any use of Ms. Fauntleroy's transcript because such use would violate his 6th amendment right to confront a witness providing testimony against him and it

5

would also amount to hearsay which does not fit within the exception set forth in Federal Rule of Evidence 804.

## LEGAL ANALYSIS

*Standard*

The hearsay rule prohibits admission of certain statements made by a declarant other than while testifying at trial. See Rules 801(c) (hearsay definition), 802 (hearsay rule). The parties herein acknowledge that the hearsay rule, standing by itself would block the use of Ms. Fauntleroy's testimony at trial, however there is an exception to this hearsay rule.

Federal Rule of Evidence 804 (b)(1) provides an exception to the hearsay rule for testimony from a declarant who is unavailable at trial. Under the rule, former testimony is admissible if the declarant is unavailable and the party against whom the testimony is offered had an "opportunity *and* similar motive" to examine the declarant. Fed.R.Evid. 804(b)(1) (emphasis added). Rule 804(b) is therefore more restrictive than the Confrontation Clause as interpreted by the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),, wherein the Court found that testimonial hearsay from a now-unavailable declarant may be admitted against a defendant at a criminal trial *if* the defendant had a prior opportunity to cross-examine him. *Crawford, 541* U.S. at 68.   Because Rule 804(b)(1) requires the party against whom the prior testimony is offered to have had a "similar motive" to develop the declarant's testimony, not merely the opportunity to do so, evidence that is admissible under Rule 804(b)(1) necessarily satisfies a defendant's Confrontation Clause rights. *See:  United States v. Mitchell,* 365 F.3d 215, 253 (3d Cir.2004) (citing *Crawford* and Rule 804(b)(1), and noting that the Sixth Amendment demands only what the common law required: "unavailability and a prior opportunity for cross-examination").

As the proponent of the evidence which is sought to be admitted, the government bears the burden of showing that Wilson's testimony meets those requirements. United States v. Dent, 984 F.2d 1453, 1466 (7th Cir.1993). Each element of Rule 804(b)(1) must be satisfied. See United States v. Salerno, 505 U.S. 317, 321, 112 S.Ct. 317, 120 L. Ed 2d 255 1992.

Mr. Conner does not dispute the Government's assertion that Ms. Fauntleroy is unavailable, nor does it dispute that her testimony to the Disciplinary Committee constituted "testimony" as that word is used in the rule. What Mr. Conner does dispute is that he had a similar motive when questioning Ms. Fauntleroy during the hearing and that he had the opportunity to fully develop her testimony. It is for those reasons that he contends that the testimony should not be allowed.

***The motives in the Disciplinary Board hearing and the instant matter are not similar***

As alluded to above, the allegations lodged against Mr. Conner by the Disciplinary Counsel were quite straightforward- did Ms. Fauntleroy give him permission to use her money at the casino. The allegations of the Government, as set forth in the Indictment and in subsequent filings, are that Mr. Conner devised a scheme to steal S.F's money by having her execute the POA which would allow him to liquidate the insurance account, create the Wells Fargo account and thereby obtain an ATM card so that he could siphon off her funds at the casino. The Disciplinary Board made no such allegations.

Had Mr. Conner been confronted with the Government's allegations during the Disciplinary Board hearing he would have spent a substantial time establishing through cross examination that Ms. Fauntleroy wanted him to create the POA, liquidate the insurance account, open the Wells Fargo account and obtain the ATM for her benefit.

The Government should not be allowed to use her testimony because Mr. Conner did not have a similar motive when cross examining Ms. Fauntleroy during the Disciplinary Board hearing as he would have had if she testified during this trial.

***Mr. Conner did not have the opportunity to fully and thoroughly examine Ms. Fauntleroy during the Disciplinary Board Hearing***

Although the cases which have discussed the application of Rule 804(b) all support the position that if the sworn testimony of an unavailable declarant is to be used the person against whom it is to be used must have had an opportunity to have examined the declarant in the prior proceeding, there is not much discussion about what that "opportunity" must encompass. It is certainly clear that if the opponent of the use of the statement was not given any opportunity to examine the unavailable declarant then the testimony cannot be used. However, Defendant has been unable to locate any cases which discuss just how much of an opportunity to examine was given.

Although he tried, Mr. Conner could not obtain the actual complaint which Ms. Fauntleroy lodged against him or any witness statements prior to the Disciplinary Board hearing. Due Process dictates that an accused be allowed to see such fundamental documents in order to properly prepare for any judiciary or administrative proceeding. Mr. Conner therefore contends that he did not have the opportunity to examine Ms. Fauntleroy in the Disciplinary Board hearings.

Without her complaint or prior statements, he was essentially operating in the dark during his cross examination and it is Mr. Conner's contention that he therefore did not have the opportunity to cross examine Ms. Fauntleroy

WHEREFORE, for the reasons set forth above Defendant requests that the Court Deny the Government's motion to admit the testimony.

                          Respectfully submitted,

                          /s/ Arnold C. Joseph
                          Arnold C. Joseph, Esquire
                          Joseph & Associates
                          1801 Market Street
                          Suite 2500
                          Philadelphia, Pa., 19103

                          Counsel for Defendant John Kelvin Conner